Randal S. Mashburn
U.S. Bankruptcy Judge

Dated: 4/27/2020

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE:                  )

                          )      Case No. 3:19-bk-06045

BRANDON AND ANNA LAWRENCE,    )      Chapter 11

                          )      Judge Randal S. Mashburn

Debtors.              )

## ORDER CONFIRMING DEBTORS' PLAN OF REORGANIZATION DATED JANUARY 15, 2020

THIS MATTER CAME BEFORE THE COURT on April 21, 2020, for confirmation of the Debtors' *Plan of Reorganization Dated January 15, 2020* (the "Plan"). [Docket No. 36]. Following appearances by the Debtors and the Debtors' counsel, it was represented by Debtors' counsel, and affirmed through testimony of the Debtors, that: (i) the ballots received indicate that all impaired classes of claims other than the Class 8 Claim held by Huntington National Bank voted in favor of the Plan; (ii) the treatment of the Class 8 Claim is fair and equitable pursuant to 11 U.S.C. § 1129(b), (iii) the supporting ballots of certain classes of claims were contingent on certain consensual changes to the treatment of such claims to be integrated into the Plan as confirmed, none of which negatively impact the guaranteed distribution to any other claimant or class of claims, and (iv) the Plan otherwise complies with the requirements of 11 U.S.C. § 1129.

Based upon these statements made in open court, and upon consideration of the Plan and the sworn testimony of the Debtors at the hearing on confirmation of the Plan, the Court hereby ORDERS, ADJUDGES, AND DECREES that the Plan shall be, and hereby is CONFIRMED in accordance with 11 U.S.C. § 1129.

A copy of the Plan that incorporates the statements and resolutions above is attached hereto as Exhibit A and shall act as the CONFIRMED PLAN. Within three (3) days of entry of this Order, notice of this Order with Exhibit A attached thereto shall be mailed to each of the Debtors' creditors and the Office of the United States Trustee. The Debtors shall thereafter file a certificate of service confirming service of this Order in accordance with the terms set forth herein.

IT IS SO ORDERED.

THIS ORDER WAS SIGNED AND ENTERED
ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE

APPROVED FOR ENTRY:

/s/ Ned Hildebrand
Henry E. ("Ned") Hildebrand, IV
DUNHAM HILDEBRAND, PLLC
2416 21st Avenue South, Suite 303
Nashville, TN 37212
615.933.5851
ned@dhnashville.com
*Counsel for the Debtors*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

IN RE:                )

                      )     Case No. 3:19-bk-06045

BRANDON AND ANNA LAWRENCE,   )     Chapter 11

                      )     Judge Randal S. Mashburn

Debtors.            )

## PLAN OF REORGANIZATION DATED JANUARY 15, 2020

The Debtors, Brandon Lawrence and Anna Lawrence (collectively, the "Debtors"), propose the following Plan of Reorganization pursuant to Chapter 11 of Title 11, United States Code:

## ARTICLE I

## DEFINITIONS

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan.  Such meanings shall be equally applicable to both the singular and plural forms of such terms.  Any term used in initially capitalized form in this Plan that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code.

1.1     "Administrative Claim" means any claim incurred against the Debtors or their bankruptcy estate after the filing of this Bankruptcy Case, including, but not limited to, claims for compensation of professionals made pursuant to §§ 330 and 331 of the Code and claims entitled to administrative priority pursuant to §§ 507(a)(1) and 503(b) of the Code.

1.2     An "Allowed" Claim means any undisputed, liquidated and non-contingent Claim whose amount was properly listed in Debtors' Schedules and for which a proof of claim was timely filed pursuant to this Court's *Order and Notice Establishing Bar Date for Filing Claims* (the "Bar Date Order" (Docket No. 24), to which Claim no written objection to the allowance thereof has

been interposed within the period of time fixed by this Plan, or as to which Claim an objection to the Claim has resulted in the allowance of a Claim, in whole or in part, by a Final Order of the Court. Anytime "Allowed" is used to describe a secured claim, Allowed Claim shall mean an amount not greater than the value of the collateral that secures such claim.

1.3 "Applegrove Property" shall mean the residential real estate owned and leased by the Debtors, as lessors, and located at 940 Applegrove Circle, Clarksville, TN 37040.

1.4 "Bankruptcy Code" means Title 11 of the United States Code, as amended.

1.5 "Bar Date" means the date fixed by the Court as the last day for filing proofs of claim, which is January 24, 2020 for non-governmental creditors and April 24, 2020 for governmental creditors pursuant to the Bar Date Order.

1.6 "Chapter 11 Case" means the above entitled and numbered case commenced by the Debtors pursuant to the provisions of Chapter 11 of the Code.

1.7 "Claim" means: (i) right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.8 "Claimant" means the holder of a Claim against or an Interest in the Debtors.

1.9 "Claims Objection Deadline" means the earlier of (a) 90 days after the Effective Date of the Plan or (b) the date on which the Debtors file a Motion for Final Decree pursuant to 11 U.S.C. § 350.

1.10 "Confirmation" means the entry by the Court of the Confirmation Order.

1.11 "Confirmation Date" means the date upon which the Confirmation Order is entered

2

by the Court.

1.12    "Confirmation Order" means the Order entered by the Court confirming the Plan.

1.13    "Court" means the United States Bankruptcy Court for the Middle District of Tennessee, Nashville Division.

1.14    "Debtors" means the Debtors, Brandon and Anna Lawrence, as Debtors-in-Possession and with the status and rights conferred by 11 U.S.C. § 1107.

1.15    "Debtors' Assets" means all of the Debtors' assets and interests, including but not limited to, all prepetition and postpetition causes of action.  The Debtors' Assets specifically include actions arising under Title 11, Chapter 5 of the Bankruptcy Code.

1.16    "Debtors' Professionals" means attorneys, accountants, appraisers, auctioneers or other professional persons hired by the Debtors and whose employment is approved by the Court pursuant to § 327 of the Bankruptcy Code or whose services are utilized by the Debtors in the ordinary course of the Debtors' business.

1.17    "Disclosure Statement" means the Disclosure Statement for this Plan of Reorganization, together with any supplements, amendments, or modifications thereto.

1.18    "Disputed Claim" means a Claim to which a written objection to the allowance or classification thereof, in whole or in part, is timely filed by any party-in-interest and as to which no Final Order or Final Judgment sustaining such objection or allowing or disallowing such Claim, in whole or in part, has been entered by the Court.

1.19    "Effective Date of the Plan" means 30 days after the Confirmation Order becomes a Final Order.

1.20    "Final Order" or "Final Judgment" means an order or judgment of the Court: (a) as to which the time to appeal, petition for certiorari, or seek reargument or rehearing has expired and as to which no appeal, reargument, certiorari petition, or rehearing is pending, or (b) if an appeal,

3

reargument, certiorari or rehearing thereof has been sought, the order of the Court has been affirmed by the highest court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further reargument or rehearing has expired.

1.21    "Paradise Hill Property" means the residential real estate owned and leased by the Partnership (defined herein) as lessors, and located at 1232 Paradise Hill Road, Clarksville, TN, 37040.

1.22    The "Partnership" means the residential real estate holding company partnership established by the Debtors and their non-filing partners, Joshua and Meghan Souter, for the purpose of owning and renting the Richardson Property and the Paradise Hill Property (as defined herein).

1.23    "Petition Date" means September 18, 2019.

1.24    "Plan" means this Plan of Reorganization and all future amendments and modifications thereof.

1.25    "Principal Residence" means the Debtors' principal residence located at 3048 Ryecroft Lane, Franklin, TN 37064.

1.26    "Richardson Property" means the residential real estate owned and leased by the Partnership (defined herein) as lessors, and located at 822 Richardson Street, Clarksville, TN 37040.

1.27    "Secured Claim" means an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value, determined in accordance with § 506(a) and § 506(b) of the Bankruptcy Code, of the interest of the holder of such Allowed

4

Claim in the Debtor's interest in such property, or to the extent of the amount subject to such setoff as the case may be, and reduced by such further amount or amounts, if any, as may be determined by the Court after notice and a hearing to be the reasonable and necessary costs and expenses of preserving and disposing of such asset pursuant to § 506(c) of the Bankruptcy Code.

1.28 "Substantial Consummation" means the commencement of distribution under the Plan to any class of creditor, as set forth in 11 U.S.C. § 1101(2)(C).

1.29 "Unsecured Claim" means any Allowed Claim that is not a Secured Claim, including but not limited to the following: (a) Claims under executory contracts and unexpired leases that have heretofore been rejected, that are rejected under this Plan or that may be rejected prior to the Confirmation Date; (b) Claims of general trade creditors; (c) Claims for unpaid wages or benefits (including claims for vacation, sick and holiday pay) to the extent not entitled to be priority claims under 11 U.S.C. § 507 as provided herein; and (d) any other obligations, liabilities, damages or any other Claim held against the Debtors of every type and nature whatsoever incurred on or before, the date of the entry of the order for relief in this case.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

Claims and Interests are divided into the following classes:

2.1 Class 1 shall include costs and expenses of administration as defined in 11 U.S.C. § 503, excluding Claims that are expressly included in the definition of any other class. Class 1 includes Claims of professionals pursuant to §§ 330 and 331 of the Bankruptcy Code and fees due the United States Trustee pursuant to 28 U.S.C. § 1930.

2.2 Class 2 shall consist of the First Secured Claim of Franklin Synergy Bank ("FSB"), defined in the Disclosure Statement as the First FSB Claim, in the amount of $298,209.13, including pre-petition arrearages of $3,284.32, plus allowable post-petition fees and expenses,

5

secured by a first priority lien on the Principal Residence, and less any amounts received by FSB under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder (the "First FSB Claim"). The First FSB Claim also includes the arrearage owed thereon for unpaid pre-petition mortgage payments. The First FSB Claim arises from a promissory note and deed of trust in favor of FSB and recorded with the Williamson County, Tennessee Register of Deeds, a copy of which is attached to FSB's first proof of claim. [*See* Claim No. 10]. The Debtors intend to pay the First FSB Claim in full pursuant to the Plan and further have no intention of impairing the collateral securing repayment of the obligations arising from the First FSB Claim.

2.3    Class 3 shall consist of the Second Secured Claim of Franklin Synergy Bank, defined in the Disclosure Statement as the Second FSB Claim, in the amount of $39,814.23, plus allowable post-petition fees and expenses, secured by a second priority lien on the Principal Residence, less any amounts received by FSB under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder (the "Second FSB Claim"). The Second FSB Claim also includes the arrearage owed thereon for unpaid pre-petition payments on the loan underlying the Second FSB Claim. The Second FSB Claim arises from an open-ended promissory note and deed of trust in favor of FSB and recorded with the Williamson County, Tennessee Register of Deeds, a copy of which is attached to FSB's second proof of claim. [*See* Claim No. 11]. The Debtors intend to pay the Second FSB Claim in full pursuant to the Plan and further have no intention of impairing the collateral securing repayment of the obligations arising from the Second FSB Claim.

2.4    Class 4 shall consist of the Secured Claim of Lakeview Loan Servicing, LLC ("Lakeview"), defined in the Disclosure Statement as the Lakeview Claim, in the amount of $102,314.50, representing the sum of Lakeview's claim as of the Petition Date and its allowable

6

post-petition fees and expenses, secured by a first priority lien on the Applegrove Property, less any amounts received by Lakeview under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder. The Lakeview Claim arises from a promissory note and deed of trust in favor of CMC Mortgage and recorded with the Montgomery County, Tennessee Register of Deeds as Instrument No. 17398 on August 6, 2018, which was subsequently assigned to Lakeview pursuant to that certain *Corporate Assignment of Deed of Trust* recorded with the Montgomery County, Tennessee Register of Deeds as in Book 1917, Pages 2087-88 on October 15, 2019. The Debtors intend to pay the Lakeview Claim in full, plus applicable escrow payments as set forth in the loan documents establishing the Lakeview Claim, pursuant to the Plan and further have no intention of impairing the collateral securing repayment of the obligations arising from the Lakeview Claim.

2.5     Class 5 shall consist of the Secured Claim of First Advantage Bank ("FAB"), defined in the Disclosure Statement as the FAB Claim. The FAB Claim is in the amount of $66,428.42, plus allowable post-petition fees and expenses, secured by a first priority lien on the Paradise Hill Property (the "FAB Claim"). The Debtors are not the only obligors on the FAB Claim; the Debtors' partners in the Partnership, Josh and Meghan Souder, are also codebtors. The Debtors' obligation to FAB on the FAB Claim arises from a promissory note and deed of trust (the "FAB DOT") dated November 19, 2018 in the original principal amount of $66,800.00 and recorded with the Montgomery County Register of Deeds (the "Montgomery Register's Office") on November 22, 2018 in Book 1849, Pages 1874-84. The FAB Claim has historically been paid by the Partnership using revenue generated from the rental income received from the tenants of the Paradise Hill Property. The Debtors, by and through the Partnership, intend to pay the FAB Claim in full pursuant to the Plan and further have no intention of impairing the collateral securing repayment of the obligations arising from the FAB Claim.

7

2.6     Class 6 shall consist of the first Secured Claim of Bancorp South ("BCS"), defined in the Disclosure Statement as the First BCS Claim.   The First BCS Claim is in the amount of $162,301.53, which is secured by a third priority mortgage on the Principal Residence.   The Debtors' obligation to BCS on the First BCS Claim arises from a promissory note and deed of trust (the "First BCS DOT") dated June 19, 2018 in the original principal amount of $160,000.00 and recorded with the Williamson County Register of Deeds (the "Register's Office") on June 26, 2018 in Book 7396, Pages 548-52.  The Debtors intend to pay the First BCS Claim on a bifurcated basis by treating the First BCS Claim as secured equal to the value of the Debtors' equity in the Primary Residence after considering the First FSB Claim and the Second FSB Claim, or $50,000.00, while treating the remaining amount as unsecured as set forth to the Plan.  The Debtors have no intention of impairing the collateral securing repayment of the obligations arising from the First BCS Claim.

2.7     Class 7 shall consist of the second Secured Claim of Bancorp South, defined in the Disclosure Statement as the Second BCS Claim.  The Second BCS Claim is a secured claim in the amount of $100,000.00, or such other amounts as BCS may assert in any proof of claim filed with the Court.  The Second BCS Claim is secured on the Richardson Property, which is owned by the Partnership.  The Debtors are not personally liable for the Second BCS Claim, but the Second BCS Claim nonetheless encumbers the Richardson Property, in which the Debtors hold an interest through their membership in the Partnership.  The Debtors' obligation on the Second BCS Claim arises from a deed of trust (the "Second BCS DOT") dated April 11, 2019 in the original principal amount of $103,000.00 and recorded with the Montgomery County, Tennessee Register's Office on April 16, 2019 in Book 1874, Pages 2494-2505.  The Second BCS Claim has historically been paid by the Partnership using revenue generated from the rental income received from the tenants of the Richardson Property.  The Debtors, by and through the Partnership, intend to pay the Second BCS Claim in full pursuant to the Plan and further have no intention of impairing the collateral

8

securing repayment of the obligations arising from the Second BCS Claim.

2.8    Class 8 shall consist of the secured claim of Huntington National Bank ("HNB"), defined in the Disclosure Statement as the HNB Claim. The HNB Claim is allowed in the amount of $16,831.48 as of the Petition Date, less any amounts received by HNB under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder. The HNB Claim is secured by a lien on the Debtors' 2015 Chevrolet Tahoe (the "Encumbered Vehicle"). The HNB Claim arises from a purchase money loan taken by the Debtors for the Debtors' purchase of the Encumbered Vehicle and is secured on the Encumbered Vehicle pursuant to a security agreement with HNB and a notation of HNB as lienholder on the Encumbered Vehicle's certificate of title. The Debtors intend to pay the HNB Claim in full on the terms described below.

2.9    Class 9 shall consist of the priority unsecured claim of the Internal Revenue Service, defined in the Disclosure Statement as the IRS Claim. The Internal Revenue Service asserts a priority unsecured claim for $18,472.18 for unpaid income taxes for 2017. The Debtors intend to pay the IRS Claim in the manner described below.

2.10   Class 10 shall consist of the general unsecured claims against the Debtors, including any deficiency liability on any bifurcated claim of any secured creditor separately scheduled above. The total amount of the General Unsecured Claims is $210,042.22. A detailed listing of the General Unsecured Claims is attached hereto as Exhibit A. Exhibit A contains the amount in which such General Unsecured Claims are proposed to be deemed as allowed unsecured claims. If an asserted claim is not contained on this list, or if a claimant believe the amount is inaccurate, the Plan shall be considered either to object to the allowance of, or the amount of, the claim. The hearing on any objection to this allowance or disallowance shall be consolidated with the hearing on confirmation of the Plan. The Debtors intend to treat the General Unsecured Claims by paying

9

them *pro-rata* based on the amount to be distributed thereto as set forth in the Plan and explained below.

    2.11    Class 11 shall consist of the Debtors' ownership interests in the Debtor's estate.

## ARTICLE III

## SUMMARY OF PLAN AND TREATMENT OF CLAIMS

### A. Classification of Claims and Interests

The Claims of creditors and Interests of equity security holders under the Plan are divided into the following classes:

| | |
|---|---|
| Class 1 | *Administrative Expense Claims* |
| Class 2 | *First Secured Claim of Franklin Synergy Bank* |
| Class 3 | *Second Secured Claim of Franklin Synergy Bank* |
| Class 4 | *Secured Claim of Lakeview Loan Servicing, LLC* |
| Class 5 | *Secured Claim of First Advantage Bank* |
| Class 6 | *First Secured Claim of Bancorp South* |
| Class 7 | *Second Secured Claim of Bancorp South* |
| Class 8 | *Secured Claim of Huntington National Bank* |
| Class 9 | *Priority Unsecured Claim of Internal Revenue Service* |
| Class 10 | *General Unsecured Claims* |
| Class 11 | *Ownership Interests* |

### B. Treatment of Claims

Class 1 and Class 11 are unimpaired as determined pursuant to 11 U.S.C. § 1124. All other classes are impaired. The following is a summary of the treatment provided in the Plan to each Class of Claims and Interests:

    1.    <u>Class 1: Administrative Expense Claims</u>. Class 1 consists of Administrative

10

Expense Claims that are deemed Allowed pursuant to 11 U.S.C. §§ 503 and 507(a)(2). Except for quarterly fees owed to the United States Trustee, which will be paid when due, the holders of Class 1 Allowed Claims shall be fully paid within 10 business days of the later of: (i) the entry and finality of an order of the Court allowing such claim or (ii) the Effective Date of the Plan, absent any agreement with any holder of any administrative claim for payment at a later date or on different terms provided such terms do not prejudice or alter the treatment of any other claimants in this case. The Debtor shall continue to make post-confirmation quarterly fee payments to the United States Trustee until entry of a Final Decree pursuant to 11 U.S.C. § 350. Any administrative claims representing a liability incurred in the ordinary course of the Debtors' business may be paid in cash after the Confirmation Date.

    2.    <u>Class 2:  First Secured Claim of Franklin Synergy Bank</u>.  Class 2 consists of the First FSB Claim.  The Class 2 Claim shall be Allowed in the amount of $298,209.13, less any amounts received by FSB under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder.  The Class 2 Claim shall be paid in full as follows, by separately treating the ongoing mortgage payment and the prepetition arrearage owed thereon.  The ongoing mortgage payment shall be paid with interest at four point two five percent (4.25%) per annum on the same terms as the existing *Note* executed by the Debtors in favor of FSB as evidenced by Claim No. 10.  With respect to the Class 2 Claim, this results in regular monthly payments of $1,563.96 in principal and interest payments, along with any ordinary escrow payments for taxes and insurance to the extent the Debtors wish to escrow such payments through FSB or its servicer, with such payments to continue until the Class 2 Claim is paid in full.  The Debtors shall separately pay the arrearage owed on the Class 2 Claim of $3,284.32, plus agreed attorney's fees owed to FSB of $4,000.00, over sixty (60) months with four point two five percent (4.25%) interest per annum, resulting in regular monthly payments of $134.98.  FSB shall retain

11

its lien on the Principal Residence under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Class 2 Claim as set forth herein, inclusive of the prepetition arrears and the ongoing conduit mortgage payment. The Debtors shall also retain all required insurance on the collateral securing the Class 2 Claim. Any terms of the existing note and security agreement evidencing the Class 2 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan. Notwithstanding the provisions of Section 9.10 below, in the event of any default of the Debtors under this Plan with respect to FSB or the First FSB Claim, Section 9.10 of this Plan shall not apply to FSB. Instead, FSB's rights and obligations shall be those set forth in the loan documents upon which the First FSB Claim is based.

3. <u>Class 3: Second Secured Claim of Franklin Synergy Bank</u>. Class 3 consists of the Second FSB Claim, as defined above. The Class 3 Claim shall be allowed in the amount of $39,814.23, less any amounts received by FSB under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder. The Class 3 Claim shall be paid in full, with interest at six percent (6%) per annum on the same terms as the existing *Note* executed by the Debtors in favor of FSB as evidenced by Claim No. 11. With respect to the Class 3 Claim, this results in regular monthly payments of approximately $250.00, representing interest only payments, or such other amount as may be due for ongoing interest on the *Note* referenced herein, with a balloon payment of the remaining amounts due and owing on the Class 3 Claim to be paid in full on or before February 2, 2026, representing the Maturity Date on the existing *Note* as evidenced in Claim No. 11. The Debtors shall separately pay the arrearage owed on the Class 3 Claim of $1,977.53 over twelve (12) months with zero percent (0.00%) interest per annum, resulting in regular monthly payments of $164.79. FSB shall retain its lien on the Residence under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Class 3 claim as set forth herein. The Debtors shall also retain all required insurance and pay

12

all property taxes on the collateral securing the Class 3 Claim, whether directly or through escrow with FSB or its servicer. Any terms of the existing note and security agreement evidencing the Class 3 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan. Notwithstanding the provisions of Section 9.10 below, in the event of any default of the Debtors under this Plan with respect to FSB or the Second FSB Claim, Section 9.10 of this Plan shall not apply to FSB. Instead, FSB's rights and obligations shall be those set forth in the loan documents upon which the Second FSB Claim is based.

4. <u>Class 4: Secured Claim of Lakeview Loan Servicing, LLC</u>. Class 4 consists of the secured claim of Lakeview. The Class 4 Claim shall be Allowed in the amount of $102,314.50, less any amounts received by Lakeview under any order granting adequate protection thereto, with such amounts being applied to principal owed thereunder. The Class 4 Claim shall be paid in full, with interest at a rate of four point five percent (4.5%) per annum in three hundred sixty (360) equal monthly installments beginning on the first day of the month following the Effective Date of the Plan and continuing on the first day of each successive month until paid in full. With respect to the Class 4 Claim, this results in regular monthly payments of $518.41. The Debtors shall also pay all escrows required under the loan documents upon which the Class 4 Claim is based (the "Lakeview Loan Documents"), including escrows for taxes and insurance, in addition to its payment of the Class 4 Claim. Lakeview reserves the right to adjust the amount of monthly escrow payments from time to time upon sending notice to the Debtors in the form provide in the Lakeview Loan Documents. The Class 4 Claim shall be secured by a lien on the Applegrove Property under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Class 4 Claim as set forth herein. Any terms of the existing note and security agreement evidencing the Class 4 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

13

5. <u>Class 5: Secured Claim of First Advantage Bank.</u> Class 5 consists of the secured claim of First Advantage Bank. The Class 5 Claim shall be Allowed in the amount of $66,428.42. The Class 5 Claim shall be paid in full by the Partnership on the same terms as set forth in the existing promissory note supporting the Class 5 Claim. [*See* Claim No. 4]. As set forth above, the Class 5 Claim is evidenced by a promissory note executed by the Debtors and their non-filing partners in the Partnership, and the collateral securing the Class 5 Claim is the Paradise Hill Property, which is owned by the Partnership. Because the Partnership is not a debtor in this bankruptcy case, nor are the Debtors' partners individually, the Class 5 Claim shall be paid by the Partnership directly, on its ordinary terms as set forth in the promissory note attached to Claim No. 4, with interest at a rate of five point seven five percent (5.75%) per annum as set forth therein. This payment shall be funded by the Partnership with rents received on the Paradise Hill Property. FAB shall retain its lien on the Paradise Hill Property to secure payment of the Class 5 Claim pending full payment thereof. The Debtors, either individually or through the Partnership, shall also retain all required insurance on the collateral securing the Class 5 Claim. Any terms of the existing note and security agreement evidencing the Class 5 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

6. <u>Class 6: First Secured Claim of Bancorp South.</u> Class 6 consists of the first secured claim of Bancorp South, defined above as the First BCS Claim. The Class 6 Claim shall be allowed in the amount of $50,000.00. The Class 6 Claim shall be paid in full, with interest at a rate of four point five percent (4.5%) per annum in two hundred forty (240) equal monthly installments beginning on the first day of the month following the Effective Date of the Plan and continuing on the first day of each successive month until paid in full. With respect to the Class 6 Claim, this results in regular monthly payments of $316.79. The Class 6 Claim shall be secured by a lien on the Primary Residence under this Plan in the same manner and priority as existed on the Petition

14

Date pending full payment of the Class 6 Claim as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Class 6 Claim. Any terms of the existing note and security agreement evidencing the Class 6 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

7.     <u>Class 7: Second Secured Claim of Bancorp South</u>. Class 7 consists of the second secured claim of Bancorp South, defined above as the Second BCS Claim. The Class 7 Claim shall be paid in full by the Partnership on the same terms as set forth in the existing promissory note supporting the Class 7 Claim. As set forth above, the Debtors are not personally obligated to pay the Class 7 Claim. They merely own an interest in the Richardson Property by and through their interest in the Partnership, which collateralizes the Class 7 Claim. The Class 7 Claim is evidenced by a promissory note executed by the Debtors' non-filing partners in the Partnership. Because neither the Partnership nor the Debtors' partners in the Partnership are debtors in this bankruptcy case, the Class 7 Claim shall be paid on its ordinary terms as set forth in the promissory note secured by the Second BCS DOT, with interest on the terms set forth therein. The monthly payments owed thereon shall be paid in the ordinary course by the Partnership, in part or in whole from funds received from rents from the Partnership's tenants that occupy the Richardson Property. BCS shall retain its lien on the Richardson Property to secure payment of the Class 7 Claim pending full payment thereof. The Debtors, either individually or through the Partnership, shall also retain all required insurance on the collateral securing the Class 7 Claim. Any terms of the existing note and deed of trust evidencing the Class 7 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

8.     <u>Class 8: Secured Claim of Huntington National Bank</u>. Class 8 consists of the secured claim of Huntington National Bank. The Class 8 Claim shall be allowed in the amount of $16,831.48, less any amounts received by HNB under any order granting adequate protection

15

thereto, with such amounts being applied to principal owed thereunder. The Class 8 Claim shall be paid in full, with interest at a rate of four point five percent (4.5%) per annum in sixty (60) equal monthly installments beginning on the first day of the month following the Effective Date of the Plan and continuing on the first day of each successive month until paid in full. With respect to the Class 8 Claim, this results in regular monthly payments of $313.79. The Class 8 Claim shall be secured by a lien on the Encumbered Vehicle under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Class 8 Claim as set forth herein. The Debtors shall also retain all required insurance on the collateral securing the Class 8 Claim. Any terms of the existing note and security agreement evidencing the Class 8 Claim which may conflict with the terms of the Plan shall be deemed modified by the terms of the Plan.

9. <u>Class 9: Priority Unsecured Claims of the Internal Revenue Service</u>. Class 9 consists of the priority unsecured claim of the Internal Revenue Service. The Class 9 Claim shall be deemed allowed in the amount of $18,472.18, representing unpaid income tax liability of the Debtors for tax year 2017. The Class 9 Claim shall be paid in full, with interest at a rate of five percent (5%) per annum in forty-eight (48) equal monthly installments of $425.40. Notwithstanding the foregoing, to the extent the Debtors file any amended tax return for 2017 or other document that reduces or modifies the Debtors' prepetition liability on the IRS Claim, the Debtors' payment obligations to the IRS shall be similarly modified to reflect the true amount owed thereto and paid on the same terms and interest rate without any impact to the treatment of any other class of creditor as proposed herein.

10. <u>Class 10: General Unsecured Claims</u>. Class 10 consists of the general unsecured claims owed by the Debtors, including the deficiency owing by the Debtors on the Second BCS Claim, for which a proof of claim has been filed on or before January 24, 2020 (the Bar Date") as set forth in the Court's *Order and Notice Establishing Bar Date for Filing Claims*.

16

[Docket No. 24]. The total amount of the Class 10 Claims as scheduled by the Debtors or for which a proof of claim has been filed are set forth in Exhibit A and shall be deemed allowed in the amount of $210,042.22, subject to a reduction based on the amount of claims for which a proof of claim has been filed by the Bar Date. The Class 10 Claims shall be paid *pro-rata* from a payment of $20,000.00 (the "Unsecured Claim Payment") to be paid with zero percent (0%) interest in ten (10) annual installments beginning on the first day of the first month following the Effective Date and continuing on the anniversary of the first payment until the Unsecured Claim Payment has been satisfied. This results in annual payments of $2,000.00 to the holders of the General Unsecured Claims.

11. <u>Class 11: Ownership Interests in the Debtor</u>. Brandon Lawrence and Anna Lawrence, the individual Debtors, holds the ownership interests in the Debtors' equity. Under the Plan, the Debtors shall retain all ownership interest in all property of the estate, subject to the terms of the Plan.

## ARTICLE IV

## **IMPAIRED AND UNIMPAIRED CLASSES OF CLAIMS AND INTERESTS**

Classes 1 and 11 are unimpaired under the Plan. All other classes are impaired.

## ARTICLE V

## **MEANS FOR EXECUTION OF THE PLAN**

5.1 The Debtors have remained as Debtors-In-Possession and in control of their affairs since the Petition Date. There has been no examiner, restructuring officer, or other professional appointed to control the Debtors' affairs.

5.2 During the pendency of this case, the Debtors have developed a going-forward budget (the "Budget"), which is attached to the Disclosure Statement as Exhibit B. This Budget was formed based on the Debtors' anticipated income from their traditional wage employment and

17

the net income received as landlords on the Applegrove Property, as well as their anticipated expenses. Based on the Budget, the Debtors are likely to meet the repayment schedule set forth in the Plan. The Debtors further note that Brandon Lawrence is approved as a driver for Lyft and Uber, and he may utilize these services to supplement the Debtors' income in the event of any income or expense shock that may arise after confirmation.

## ARTICLE VI

## <u>OBJECTIONS TO CLAIMS</u>

6.1 This Plan expressly objects to the Claims filed by any creditor not referenced in this Plan (to include attachments hereto).

**6.2 THE DEBTOR PROPOSES TO RESOLVE ANY CLAIM OBJECTIONS, IF DISPUTED BY SUCH ALLEGED CLAIMANTS, IN CONNECTION WITH THE CONFIRMATION HEARING OF THE PLAN. THE DEBTOR OR ANY PARTY IN INTEREST MAY FILE AN OBJECTION TO ANY CLAIM IN ANY CLASS ON OR BEFORE THE CLAIMS OBJECTION DEADLINE. OBJECTIONS NOT FILED WITHIN SUCH TIME WILL BE DEEMED WAIVED. IF ANY CLAIM OR PORTION THEREOF IS CHALLENGED BY AN OBJECTION OR OTHERWISE, DISTRIBUTION MAY, IN THE DEBTOR'S SOLE DISCRETION, BE MADE ON ANY PORTION OF SUCH DISPUTED CLAIM WHICH IS UNDISPUTED PENDING RESOLUTION OF THE CLAIM ALLOWANCE AS A WHOLE.**

## <u>ARTICLE VII</u>

## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

7.1 The only executory contract of which the Debtors are aware are the executory contracts between the Debtors, as lessors, and their tenants, Babette Bobka and Jesse Wolfe, as lessees, for the Applegrove Property, as set forth in Schedule G to the Debtors' Statements and

18

Schedules (the "Applegrove Lease"). The Debtors intend to assume all of their rights and obligations under the Applegrove Lease. The Partnership also holds two executory contracts as lessors, to specifically include (a) the residential lease between the Partnership, as lessor, and Michael Felgenhaur and Shelbie Phillips, as lessees, for the Richardson Property (the "Richardson Lease"); and (b) the residential lease between the Partnership, as lessor, and Rachel Dibbins and Carlos Inman, as lessees, for the Paradise Hill Property (the "Paradise Hill Lease"). The Debtors assert that the Partnership, either in its name or in the name of the Debtors' partners therein, is the proper lessor on the Richardson and Paradise Hill Leases, and not the Debtors individually. Out of an abundance of caution, however, to the extent the Debtors are parties to the Paradise Hill Lease and/or the Richardson Lease as lessors thereunder, the Debtors intend to assume all of their rights and obligations under such leases. The Debtors are not aware of any other leases or executory contracts that they anticipate assuming or rejecting upon Confirmation. To the extent there are any executory contracts of the Debtors not specifically assumed hereunder, the Debtors hereby specifically reject those contracts retroactively to the Petition Date.

## ARTICLE VIII

## PRESERVATION OF CAUSES OF ACTION

8.1     <u>Retention of Claims</u>. All causes of action, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Bankruptcy Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Bankruptcy Code, or otherwise, and whether or not such actions have been commenced prior to the Effective Date of the Plan, shall be retained by the Debtors. This expressly includes, but is not limited to, all causes of action identified by the Debtors in their Statement of Financial Affairs, as well as all causes of action that arose prior to and after the Petition Date.

8.2     <u>NOTICE TO POTENTIAL DEFENDANTS</u>:  In the Statement of Financial Affairs

19

on file with the Court, the Debtors listed all payments made within ninety (90) days prior to the Petition Date, and payments made within one (1) year prior to the Petition Date to insiders of the Debtors. Each and every person listed as having received any such payment, as well as any other unlisted party that did, in fact, receive any such transfer, or believes it may have received such a transfer, is on notice that the rights of the Debtors to recover such payments are preserved for possible prosecution by the Debtors. Recovery shall not be limited to the amounts set forth in the Statement of Financial Affairs. To the extent the Debtors may have inadvertently omitted any such payment or transfer, all rights of the Debtors to avoidance and recovery as are provided by the Bankruptcy Code are also preserved. Any party requiring explanation of the Code sections cited in this section or any of the statements herein should seek the advice of counsel.

## ARTICLE IX

## MISCELLANEOUS PROVISIONS

9.1    <u>Distributions</u>.   Notwithstanding anything contained herein, all distributions to classes under this Plan will only be made after creditors in said classes have had their Claims fully fixed and Allowed by the Court; however, distribution may be made, in the Debtors' discretion, on any portion of a disputed Claim which is undisputed pending resolution of the Claim allowance as a whole. On the date that any distribution to Allowed General Unsecured Claims is due, a Claim must be Allowed, non-contingent, liquidated and undisputed in order to have a right to share in such distribution.

9.2    <u>Payments During Bankruptcy Applied First to Principal</u>.   To the extent that any Claimant treated under this Plan has, prior to the Effective Date of the Plan, received any payments from any source on any obligation treated in this Plan, as part of an adequate protection order or otherwise, any such payments shall be applied first to principal.

9.3    <u>Conflict; Plan Controls</u>.   To the extent that any provisions of this Plan conflict with

20

any of the terms or conditions of any note, security agreement, loan agreement, deed of trust or similar instrument, the provisions of this Plan shall control.

9.4    <u>Suspension of Payments</u>.  Upon motion and for cause shown, the Debtors may at any time move the Court to grant a moratorium or extension of distributions to Claimants in any of the classes set out herein for a reasonable period of time.  Additionally, the Debtors may propose amendments to or modifications of this Plan at any time prior to Confirmation of the Plan.  After Confirmation of the Plan, the Debtors, with approval of the Court, and so long as it does not materially or adversely affect the interests of Claimants, may remedy any defect or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

9.5    <u>Property Vests in Debtors</u>.  All title to all assets constituting property of the Debtors' estate shall vest in the Debtors free and clear of all claims, interests, liens or other charges of creditors arising prior to the Effective Date of the Plan, except as otherwise expressly provided for in this Plan.

9.6    <u>No Restrictions Upon Operations</u>.  After the Confirmation Date, the Debtors shall operate and conduct their affairs free of any restrictions and notice requirements of the Bankruptcy Code and the Bankruptcy Rules (including, but not limited to, the employment and compensation of professionals, employees, managers, and independent contractors).  The Debtors may further execute such promissory notes, deeds, deeds of trust (including amendments, restatements or modifications thereof) or any other documents necessary to effectuate the terms of this Plan.

9.7    <u>Permanent Injunction</u>.  Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold or may hold Claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against the: (i) commencement or

21

continuation of any judicial, administrative, or other action or proceeding against the Debtor or any of its owned entities on account of Claims against the Debtors, or on account of claims released pursuant to the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or any assets or property of same; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtors arising from a Claim. This provision does not enjoin the prosecution of any claims that arise on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the Allowed Amount of any Claims that arose prior to the Effective Date. Parties asserting entitlement to payment of Administrative Expenses incurred Prior to the Confirmation Date and Holders of Claims shall be permanently enjoined from asserting any Claim against the Debtor or its retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation Date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such Claim or Interest is allowed under 11 U.S.C. § 502. Notwithstanding the foregoing, nothing stated in this section shall be construed as a waiver, modification, prevention, limitation, or release of any creditors or class of creditors holding any claims secured by any property belonging to the Partnership, to specifically include the Richardson Property and the Paradise Hill Property.

9.8    <u>Prepayment of Plan Obligations</u>.  The Debtors shall be entitled to pre-pay any claim or classes of claims under the Plan without penalty at any time, or to otherwise reach any consensual agreement on modified treatment under the Plan with any class of creditor.  Upon such prepayment in full or upon full payment of any consensually modified treatment, the Debtors shall have no further obligation to pay any such claim or classes of claim.  Following any prepayment in full of any Claim or Class of Claims as set forth in the Plan, upon request of the Debtors, such claimant shall furnish the Debtors with written confirmation of satisfaction of their obligations

22

under the Plan.  Prepayment under this section shall not, however, impact, modify, or adjust the Debtors' obligations to any other class of creditors as set forth in the Plan.

9.9     <u>Payments Due Only on Business Days</u>.  Whenever any payment or distribution to be made under the Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the next business day.

9.10     <u>Plan Default</u>.  Notwithstanding the provisions of any lease or finance agreement that may survive Confirmation of the Plan, an event of default as to any Claim shall exist only if the Debtors (i) fail to make monetary payment when due and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fail to insure any property securing any Allowed Secured Claim of any creditor for the value of such property, or (iii) dispose of the property securing any Allowed Secured Claim of any creditor without either the consent of the creditor holding such Allowed Secured Claim or the payment of the net sale proceeds to that creditor.

9.11     <u>Modification of the Plan</u>.  The Debtors may propose amendments to or modifications of the Plan at any time prior to the Confirmation Date provided that the amended Plan satisfies the requirements of the Code.  If the circumstances warrant, after the Confirmation Date and before Substantial Consummation of the Plan, the Debtors may modify the Plan, provided that the Plan, as modified, meets the requirements of the Code, and the Court, after a hearing, confirms the Plan as modified.  Unless, within the time fixed by the Court, a creditor changes its previous acceptance or rejection of the Plan, such previous election shall be deemed applicable to the amended Plan.

9.12     <u>Interest Calculation</u>.  Whenever interest is calculated on a Claim prior to the Confirmation Date, the rate utilized shall be equal to the rate provided for such Claim in Article III of this Plan.

23

# ARTICLE X

# CLOSING OF THE CASE

10.1    Final Decree.  At such time as this case has been fully administered, that is, when all administrative matters or issues requiring action or resolution by the Court have been completed or resolved, the Confirmation Order has become final, and the due date for the first payments under the Plan has occurred, this case may be closed.  To close the case, the Debtors shall file a Motion for Final Decree as soon as practicable following Substantial Consummation.  The Debtors shall continue to pay U.S. Trustee quarterly fees until the Final Decree is entered.  Notwithstanding entry of a final decree in this case, the Debtors shall continue to make payments or distributions as provided in the Plan.

10.2    Discharge.  Pursuant to 11 U.S.C. § 1141(d)(5), unless the Court orders otherwise, the Debtor shall receive a discharge of all debts, liabilities, and obligations that arose before the Petition Date upon the Debtors' full performance of his obligations under the Plan.

10.3    Continued Employment of Professionals.  In the period after the Confirmation Date but before closing of the case, the Debtors may continue to avail themselves of the services of professional persons whose employment was approved at or prior to the Confirmation Date in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case.  With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Debtors who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth herein below.  In its Motion for Final Decree, the Debtors shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses

24

incurred, and with respect to which no prior application for allowance thereof has been made to the Court. At any hearing upon the Debtors' Motion for Final Decree, the Court shall consider and determine whether or not such payments shall be approved as reasonable.

## ARTICLE XI

## CONTINUING JURISDICTION OF THE COURT

11.1    In addition to the continued jurisdiction after the Confirmation Date that is provided for as a matter of law by the Bankruptcy Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a)    To determine any and all objections to the allowance, extent, priority or nature of any Claims, the amount and proper classification of the Claim of any holder and the determination of such objections as may be filed to any Claims;

(b)    To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Bankruptcy Code;

(c)    To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof;

(d)    To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e)    To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f)    To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

(g)    To consider the modification of this Plan after the Confirmation Date as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Bankruptcy Code;

25

(h)     Except as otherwise provided in this Plan, to make any determinations and to issue

any Final Orders to enforce, interpret or effectuate the Plan;

(i)     To enter a Final Order concluding and terminating this case; and

(j)     To determine such other matters as may be provided for in the Confirmation Order.


DATED:  April 26, 2020            Respectfully Submitted,

                                  **BRANDON LAWRENCE AND ANNA LAWRENCE**


                                  /s/ Brandon Lawrence
                                  BRANDON LAWRENCE

                                  /s/ Anna Lawrence
                                  ANNA LAWRENCE


/s/ Ned Hildebrand
Henry E. ("Ned") Hildebrand, IV
DUNHAM HILDEBRAND, PLLC
2416 21ST Avenue South, Suite 303
Nashville, TN 37212
615.933.5851
ned@dhnashville.com
*Counsel for Brandon and Anna Lawrence*

26

This Order has been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.